IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MELANIE M., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:21-CV-36-S-BK |
| | § | |
| COMMISSIONER, SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
|     DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff seeks judicial review of the Commissioner's final decision denying her claim for Supplemental Security Income ("SSI") and child benefits under the Social Security Act (the "Act"). She seeks benefits retroactive to her alleged onset date of January 1, 2001. Doc. 17-1 at 251. Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case has been referred to the undersigned United States magistrate judge for pretrial management. Doc. 4. The Court now considers Plaintiff's *Motion for Summary Judgment*, Doc. 20, and *Defendant's Motion for Summary Judgment*, Doc. 23. Upon review, Plaintiff's motion should be **GRANTED**, Defendant's motion should be **DENIED**, the administrative decision should be **REVERSED,** and this case should be **REMANDED** for further proceedings.

**I. BACKGROUND**

Plaintiff was born on July 7, 1999. Doc. 17-1 at 251. She graduated from high school and received special assistance throughout school, beginning in the elementary grades. Doc. 17-1 at 46-47. Plaintiff has never worked or held a job. Doc. 17-1 at 46. The record contains her extensive history of medically determinable mental impairments—including generalized anxiety

disorder; major depressive disorder, recurrent, severe with psychotic features; bipolar disorder; attention deficit hyperactivity disorder ("ADHD"); developmental and intellectual disabilities; choreiform movement disorder;[1] and obsessive-compulsive disorder ("OCD")—which is pertinent to the motions *sub judice*. *See, e.g.*, Doc. 17-1 at 349, 351, 365, 370, 401 452, 477, 790, 807-09, 912, 913, 1037, 1052-54, 1075. These impairments manifested in the form of auditory command and visual hallucinations, suicidal and homicidal ideation, and difficulty speaking. Doc. 17-1 at 365-68. Plaintiff received inpatient psychiatric care at least twice, during which it was noted that her brother and his friend sexually abused her. Doc. 17-1 at 365-68, 452.

In his sequential analysis, the Administrative Law Judge ("ALJ") found Plaintiff had the severe impairments of spinal cord disorder and Chiari malformation.[2] Doc. 17-1 at 21. As to her mental impairments, however, the ALJ found they were not severe because they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." Doc. 17-1 at 27-28. In reaching this conclusion, the ALJ determined Plaintiff was only mildly limited in each of the four broad functional areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. Doc. 17-1 at 28. The ALJ noted Plaintiff "graduated from High School, despite having what was termed a mild cognitive impairment," yet she claimed to have "difficulty with oral instructions." Doc. 17-1 at 28.

---

[1] This disorder causes involuntary, irregular, and unpredictable muscle movements. Chorea, CLEVELAND CLINIC (Jan. 17, 2020), https://my.clevelandclinic.org/health/diseases/21192-chorea.

[2] Chiari malformation "is a condition in which brain tissue extends into the spinal canal. Chiari malformation, MAYO CLINIC (Sept. 24, 2021), https://www.mayoclinic.org/diseases-conditions/chiari-malformation/symptoms-causes/syc-20354010#:~:text=Chiari%20malformation%20(kee-AH-,brain%20and%20forcing%20it%20downward.

The ALJ noted Plaintiff's ability to interact with others and normal attention span weighed against her otherwise "mild limitation." Doc. 17-1 at 28. The ALJ also highlighted Plaintiff's claims that she "requires assistance with self-care, cleaning, cooking and getting her plate on the table because of her involuntary movements," "does not drive" due to that condition, and her father keeps up with her doctors' appointments. Doc. 17-1 at 28. And although the ALJ found the State Agency medical consultants' findings—which determined Plaintiff's mental impairments were "severe," Doc. 17-1 at 61, 87, 100—"persuasive," he nevertheless rejected those opinions. Doc. 17-1 at 31.

At step three, the ALJ found none of Plaintiff's impairments met or equaled a listed impairment under the applicable Social Security regulations. Doc. 17-1 at 29. The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform "light work" as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), "except for alleged minimal involuntary body movements that are not frequent enough to interfere with performing work at the light exertional level." Doc. 17-1 at 29. The ALJ did not consider Plaintiff's mental functional limitations in determining her RFC, however; devoting a mere sentence to Plaintiff's depression, anxiety, OCD, and ADHD:

> However, for the reasons stated above, the undersigned concludes that the claimant's mental impairments [are] actually nonsevere.

Doc. 17-1 at 31. At step four, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," thus, Plaintiff is not disabled under the Act and not entitled to disability benefits. Doc. 17-1 at 32. The ALJ also denied Plaintiff's claim for child's disability insurance benefits and SSI. Doc. 17-1 at 19.

The Appeals Council denied Plaintiff's subsequent request for review of the ALJ's finding, which rendered the ALJ's decision the final decision of the Commissioner. Doc. 17-1 at

33. On January 7, 2021, after exhausting all available administrative remedies, Plaintiff filed this civil action for judicial review. Doc. 1.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or not disabled. *Id.* If the Commissioner does not make a determination, the burden shifts to her at step five to show there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Judicial review of a denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments here, the Court has relied upon their citations to the supporting evidence of record. The Court is not under an obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (providing parties moving for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (clarifying the courts are under no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted)).

### III. ANALYSIS

Plaintiff raises numerous arguments for summary judgment in her favor, but this case may be readily disposed of without reaching them all. The Court must determine whether, as Plaintiff avers, the ALJ's RFC determination was deficient. Doc. 20 at 3.

Plaintiff argues the Commissioner's decision is not supported by substantial evidence because, *inter alia*, he did not consider her mental impairments—which he deemed "nonsevere"—in his RFC determination. Doc. 20 at 3. Defendant argues that "[a]lthough the

evidence may show the existence of a mental impairment, there is indeed a distinction between the mere existence of an impairment and whether that impairment is severe." Doc. 24 at 5. The Court does not disagree. ALJs are tasked with determining the severity of a claimant's mental impairments. Doc. 17-1 at 20, 28; *see Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Here, the ALJ described his conclusion and mode of analysis:

> The claimant's medically determinable mental impairments of depressive disorder, anxiety and obsessive/compulsive disorders, and attention deficit/hyperactivity disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.
>
> In making this finding, the undersigned has considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four areas of mental functioning are known as the "paragraph B" criteria.

Doc. 17-1 at 27-28. The ALJ concluded that because Plaintiff's "mental impairments cause no more than 'mild' limitation in any of the functional areas, they are nonsevere." Doc. 17-1 at 28.

But ALJs must consider *all* impairments—even those deemed nonsevere—in assessing a claimant's RFC. 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your [RFC]"); *Castillo v. Kijakazi*, —F. Supp. 3d—, 2022 WL 1152878, at *4 (W.D. Tex. 2022) ("[E]ven where—as is the case here—an ALJ finds that a claimant's medically determinable mental impairment isn't severe, the ALJ must still consider its impact when assessing the claimant's [RFC]."). Doing so ensures that any *combined* effects of severe and nonsevere limitations, which could "prevent an individual from doing past relevant work or narrow the range of work that the individual can perform," is properly considered. 20 C.F.R. § 404.1545(a)(2); *see also* SSR 96-8P, 1996 WL 374184 ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's

ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim."). Defendant offers no explanation for the ALJ's failure to so consider Plaintiff's mental limitations here. *See* Doc. 24.

Although the ALJ stated he considered "all symptoms" in making his RFC determination and referenced Plaintiff's mental health history, Doc. 17-1 at 29, his RFC assessment is devoid of any discussion suggesting he considered of the impact of Plaintiff's mental impairments on her ability to perform light work. *See* Doc. 17-1 at 29-31; *see Rodriguez v. Barnhart*, No. SA-01-CA-1101-FB, 2003 WL 1956230, at *6-9 (W.D. Tex. Mar. 21, 2003) (faulting an ALJ for similar missing analysis). Despite finding Plaintiff had mild limitations in all four mental domains at step two, the ALJ offers no explanation as to why those limitations—not to mention the mental RFC findings of two State Agency medical consultants—are not reflected in Plaintiff's RFC determination. *Compare Castillo*, 2022 WL 1152878, at *4 (finding "the ALJ failed to explain *why* he omitted *any* mental limitations from the [RFC] formulation") (emphasis in original), *with Garcia*, 2017 WL 920750, at *11 (finding the ALJ properly considered both the claimant's severe and nonsevere impairments in determining RFC).

The ALJ committed legal error by failing to properly evaluate Plaintiff's mental limitations in formulating his RFC determination. *See Castillo*, 2022 WL 1152878, at *4 (finding an ALJ need not "*include* mental limitations in the [RFC] assessment," but must "*consider* whether mental functional limitations were warranted"). The Court is bound to accept the Commissioner's denial of benefits if it is based on substantial evidence considered on the record as a whole. *Richardson v. Perales*, 402 U.S. 389 (1971). But where the Commissioner has relied on erroneous legal standards in assessing the evidence, he must reconsider that denial. *Leidler v. Sullivan*, 885 F.2d 291, 294 (5th Cir. 1989).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 20, should be **GRANTED**, and *Defendant's Motion for Summary Judgment*, Doc. 23, should be **DENIED**. The administrative decision should be **REVERSED,** and this case should be **REMANDED** for further proceedings.

**SO RECOMMENDED** on July 20, 2022.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).